IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-743-FL

| | | |
|---|---|---|
| SHEILA LEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FAYETTEVILLE; OFFICERS | ) | |
| MOLLY O'HARA, RICHARD J. | ) | |
| RODRIGUEZ, DON BELL, KRISTA | ) | ORDER |
| ZENTNER, and ASHLEY WOLFORD, | ) | |
| in their individual and official capacities; | ) | |
| GINA HAWKINS in her official capacity as | ) | |
| Chief of Police for City of Fayetteville; and | ) | |
| MITCH COLVIN in his official capacity as | ) | |
| Mayor of City of Fayetteville, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (DE 38). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is granted in part and denied in part.

**STATEMENT OF THE CASE**

Plaintiff commenced this civil rights action December 22, 2023, and filed her operative amended complaint March 5, 2024, asserting the following claims arising out of her arrest by City of Fayetteville police officers on December 25, 2020: 1) Fourth Amendment violations for wrongful arrest and excessive force; 2) liability under Monell v. Dept. of Social Servs., 436 U.S. 658 (1977); 3) Fourteenth Amendment violations for excessive force; 4) violation of the North

Carolina Constitution; and 5) state law tort claims for civil assault, false arrest/imprisonment, malicious prosecution, intentional infliction of emotional distress, and gross negligence. Plaintiff seeks actual, consequential, and punitive damages; as well as costs, fees, and interest.

Defendants filed the instant motion seeking dismissal of all of plaintiff's claims[1] for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. In support of that part of the motion seeking dismissal for lack of subject matter jurisdiction and lack of personal jurisdiction, defendants rely upon a declaration of Douglas J. Hewett ("Hewett"), city manager for defendant City of Fayetteville, attaching an insurance policy issued by Argonaut Insurance Company (the "insurance policy"). In support of that part of the motion seeking dismissal for failure to state a claim, defendants rely upon an arrest warrant and citation pertaining to plaintiff.[2] Plaintiff responded in opposition and defendants replied.

On defendants' earlier motion, the court stayed discovery conference activities pending decision on the instant motion.

## STATEMENT OF FACTS

The facts alleged in the complaint are as follows.[3] Plaintiff is "a 56-year-old African American woman." (Compl. ¶ 1). "On December 25, 2020, during the height of the Covid-19 pandemic," Fayetteville police officers, defendants Molly O'Hara ("O'Hara") and Richard J.

---

[1]    As noted in the analysis herein, defendants concede in their reply that they do not seek dismissal of that part of plaintiff's first claim under the Fourth Amendment for excessive force. However, defendants did not describe initially the instant motion as a partial motion to dismiss. (See, e.g., Defs' Mot. (DE 38) at 3 (requesting that "Plaintiff's Amended Complaint be dismissed with prejudice")). Therefore, the court treats the motion as seeking dismissal of all of plaintiff's claims, and the court addresses defendants' concession in their reply as a component of the court's analysis on the motion.

[2]    On May 28, 2024, the court allowed defendants' motion to seal the warrant and citation and to file publicly redacted versions of the same. Because the court's analysis does not rely upon sealed portions of the warrant and citation, the instant order is not sealed.

[3]    Hereinafter, all references in this order to the "complaint" or "Compl." in citations refer to the operative amended complaint at docket entry (DE) 24.

2

Rodriguez ("Rodriguez"), "responded to a call for assistance at a private residence." (Id. ¶ 23).

Plaintiff "was present at this scene with her vehicle, legally parked on a public street outside of the

residence." (Id.). Defendants O'Hara and Rodriguez asked plaintiff to "leave the area, and she

complied, getting into her car and driving home." (Id. ¶ 24).

After plaintiff "pulled into her driveway, [d]efendants O'Hara and Rodriguez approached

[plaintiff] again, having followed her home." (Id. ¶ 25). They accused plaintiff of "having

'fictitious tags' on her car and demanded that she produce identification," while plaintiff

"vehemently denied that these tags were fictitious and asked the [d]efendants why she was being

stopped." (Id. ¶¶ 25-26).

Defendant Rodriguez then "threatened [plaintiff], claiming he would take her to jail for

'RDO[4] and fictitious tag.'" (Id. ¶ 27). Plaintiff "did not feel free to leave the situation but did not

think that she was under arrest." (Id.).

"Defendants O'Hara and Rodriguez then grabbed at [plaintiff's] arms in an attempt to force

them behind her back." (Id. ¶ 28). "O'Hara and Rodriguez shouted vague commands of 'stop

resisting' despite [plaintiff] offering no resistance." (Id.). Plaintiff stated "multiple times that she

[was] not resisting and that she . . . had shoulder surgery and her arms do not fully reach behind

her back." (Id.). Plaintiff "offered to place her arms in front for officers to place the handcuffs on

her," but "[d]efendants ignored the offer." (Id. ¶ 29).

"To prevent the officers from injuring her shoulder any further, [plaintiff] sat down in the

driver's seat of her car." (Id. ¶ 31). Plaintiff made "repeated requests for a sergeant to come and

---

[4]     At this point in the complaint, plaintiff does not specify what "RDO" stands for; however, at a later point in
the complaint, plaintiff alleges that "[f]ollowing the encounter, Defendants charged [plaintiff] with
resisting/delaying/obstructing an officer and having fictitious vehicle tag." (Compl. ¶ 49) (emphasis added).

explain to her why she is being arrested for a fictitious tag." (Id. ¶ 34). "Officers on scene were not giving her any information." (Id.).

Plaintiff "commented on the physical fitness of one of the officers, and in immediate response to her statement, multiple [d]efendants violently grab[bed] [plaintiff] by the legs and yank[ed] her out of the car, throwing her head back and dragging her body along the body of the car and onto the gravel and muddy ground." (Id. ¶ 37). Defendants "secured both of her wrists in handcuffs in front of her body." (Id. ¶ 39). "Defendants dragged [plaintiff] across the cold and muddy ground by pulling her by her restrained wrists, causing her pants to pull down and her bare skin to be exposed to the elements." (Id. ¶ 40).

Plaintiff's "mouth began to fill with blood from the injury and she spit some of it out onto the ground." (Id. ¶ 41). "Defendants were standing practically on top of her while she laid on the ground and accused her of spitting on them." (Id.). "Defendants then forced a mesh bag over [plaintiff's] head and face, obscuring her vision and hearing." (Id. ¶ 42). "This 'spit mask' caused the blood from her mouth to pool inside it and interfered with her ability to communicate with anyone." (Id.).

"In enduring this stressful-turned-violent encounter with law enforcement, physical injury, bodily restraint, obscured sight and hearing, being touched by unknown persons, and blood pooling around her mouth and nose as she [was] kept lying on the ground, [plaintiff began] to hyperventilate and exhibit the first signs of a panic attack." (Id. ¶ 43). "One of the [d]efendant [o]fficer[s] . . . joke[d] about [plaintiff's] mental health when in fact she d[id] have mental health issues and was experiencing an acute panic attack." (Id. ¶ 45). After paramedics arrived, "[o]nce secured on a stretcher and inside the ambulance, [plaintiff's] panic again intensifie[d], she beg[an] to hyperventilate again, and she state[d] that she can't breathe." (Id. ¶ 48). "The [d]efendant

4

present in the vehicle with her ignore[d] her complaints and obvious physical condition." (Id.).
And she "passe[d] out." (Id.).

"Following the encounter, Defendants charged [plaintiff] with resisting/delaying/ obstructing an officer and having fictitious vehicle tag." (Id. ¶ 49). "All charges were dismissed." (Id.).

## COURT'S DISCUSSION

A.      Standard of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Where a defendant raises a "facial challenge[] to standing that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts " the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge." Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of a claim for lack of personal jurisdiction. "When a district court considers a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014). At this stage, the court "must construe all relevant pleading allegations in the light most favorable to plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th

Cir.1989); see Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir.1993) ("[T]he district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor.").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[5]

B.    Analysis

    1.    Individual Capacity Claims

        a.    Wrongful Arrest under Fourth Amendment

Defendants argue that plaintiff's individual capacity claims for false arrest under the Fourth Amendment must be dismissed, including on the basis of an arrest warrant and citation attached to their motion to dismiss. The court disagrees.

The Fourth Amendment "protects individuals from unfounded arrests by requiring reasonable grounds to believe a crime has been committed." Street v. Surdyka, 492 F.2d 368, 372 (4th Cir. 1974). A plaintiff seeking to state a Fourth Amendment claim for "false arrest" must show "the arresting officer lacked probable cause." Id. at 372-73. "[A]llegations that a warrantless

---

[5]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

arrest . . . was not supported by probable cause advance[] a claim of false arrest." Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998). By contrast, if a plaintiff alleges "that deputies obtained a facially valid arrest warrant from a magistrate prior to [her] arrest no false arrest of [the plaintiff] could have occurred." Id.

"Probable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed an offense." Humbert v. Mayor & City Council of Baltimore City, 866 F.3d 546, 555 (4th Cir. 2017). It is "an objective standard of probability that reasonable and prudent persons apply in everyday life, and determined by a totality-of-the-circumstances approach." Id. "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id.

In this case, plaintiff alleges sufficient facts to permit a reasonable inference that she was arrested without a warrant and without probable cause. In particular, plaintiff alleges that she was "legally parked on a public street outside of [a] residence," and she then complied with officer's directions to "leave the area." (Compl. ¶¶ 23-24). When officers "followed her home," and then "accused [plaintiff] of having 'fictitious tags,'" plaintiff "denied that the[] tags were fictitious and asked the [officers] why she was being stopped." (Id. ¶ 26). According to the complaint, officers thereafter did not explain to plaintiff why she was being stopped, and then arrested her, "despite [plaintiff] offering no resistance." (Id. ¶ 28). As such, plaintiff has alleged a lack of probable cause because no warrant allegedly was obtained prior to her arrest, and plaintiff alleges no facts or circumstances supporting officers' accusation that plaintiff had fictitious tags. See Street, 492 F.2d at 372; Porterfield, 156 F.3d at 568.

Defendants' reliance upon the arrest warrant and citation attached to their motion is unavailing at this juncture for two reasons. First, it is improper for the court to consider them on a motion to dismiss pursuant to Rule 12(b)(6). The court may "consider documents attached to the complaint or incorporated by reference, including those attached to the motion to dismiss, so long as they are integral to the complaint and authentic, and may take judicial notice of matters of public record." Epcon Homestead, LLC v. Town of Chapel Hill, 62 F.4th 882, 885 (4th Cir. 2023). Neither document meets these requirements. They are not integral to the complaint because they are not even mentioned therein; and, defendants cite no case for the proposition that an arrest warrant or an offense citation is a matter of "public record." Id.[6]

Second, the arrest warrant is not determinative of plaintiff's false arrest claim because it was not obtained "from a magistrate prior to [plaintiff's] arrest." Porterfield, 156 F.3d at 568 (emphasis added). Indeed, defendants assert in their brief, without time references, that "[o]n the evening of December 25, 2020 – the same date as the incident in question" – a magistrate judge issued the warrant. (Defs' Br. (DE 39) at 13). This asserted fact, apart from being absent entirely from the complaint, is too indeterminate to establish that a warrant was issued prior to plaintiff's arrest as described in the complaint. The citation likewise is not determinative because it is not a warrant obtained prior to plaintiff's arrest. See Porterfield, 156 F.3d at 568.

Defendants also argue that plaintiff's claim fails because she does not expressly allege "officers lacked probable cause for the arrest," citing to this court's decision in Shreve v. Limpert, No. 5:19-CV-178-FL, 2019 WL 6115038, at *4–5 (E.D.N.C. Nov. 15, 2019), as an example of a

---

[6]    None of the cases cited by defendants for the proposition that the court may take "judicial notice" of the arrest warrant, (Defs' Mem. (DE 39) at 12 n. 2; Reply (DE 55) at 2), involve consideration of an arrest warrant. See Sec'y of State For Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (general standard only); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (same); Lytle v. Parsons, No. 5:12-HC-2263-D, 2013 WL 6816601, at *3 (E.D.N.C. Dec. 24, 2013) (same, furthermore in the context only of 28 U.S.C. § 2254 habeas corpus motion).

case where a false arrest claim was dismissed due to a failure to allege a lack of probable cause. Here, however, such absence of probable cause can be inferred from the allegations in the complaint, for the reasons stated above. In <u>Shreve</u>, by contrast, the plaintiff did not allege lack of probable cause for an arrest, but rather "merely question[ed] [the officer's] <u>selection</u> of charges." 2019 WL 6115038 at *5 (emphasis added).

Therefore, defendants' motion in this part is denied. Plaintiff's false arrest claim under the Fourth Amendment against defendants O'Hara, Rodriguez, Don Bell ("Bell"), Krista Zentner ("Zentner"), and Ashley Wolford ("Wolford"), in their individual capacities (first claim for relief), is allowed to proceed.

> b. Excessive Force under Fourth and Fourteenth Amendments

In their motion, defendants seek dismissal of plaintiff's complaint in its entirety, which necessarily includes plaintiff's claims for excessive force under the Fourth Amendment and Fourteenth Amendment. However, in their reply brief, defendants concede that plaintiff's "excessive force claim is not included in the motion to dismiss." (Reply (DE 55) at 6 n. 1). Based on this concession, the court denies in this part defendants' motion insofar as it relates to plaintiff's excessive force claim.

Defendants suggest, nonetheless, that part of plaintiff's claim for excessive force specifically under the Fourteenth Amendment must be dismissed because plaintiff was "not a pretrial detainee." (Def's Mem. (DE 39) at 20). However, "the Fourth Amendment only governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." <u>Orem v. Rephann</u>, 523 F.3d 442, 446 (4th Cir. 2008). By contrast, "excessive force claims of a pretrial detainee <u>or arrestee</u> are governed by the Due Process Clause of the Fourteenth

Amendment." Id. (emphasis added). A plaintiff's "status as an arrestee requires application of the Fourteenth Amendment to her claim." Id.

Here, plaintiff alleges a portion of the conduct by defendants constituting unreasonable application of force took place after she was arrested and was under attendance of paramedics at the scene, placed in an ambulance, accompanied by a defendant officer. (Compl. ¶¶ 45-48). Therefore, the allegations in the complaint permit an inference that plaintiff was "an arrestee" during the time period of alleged conduct in violation of the Fourteenth Amendment by defendants. Orem, 523 F.3d at 446. Recognizing that "[t]he point at which Fourth Amendment protections end and Fourteenth Amendment protections begin is often murky," Id., the court leaves for another day parsing of the applicable Fourth Amendment and Fourteenth Amendment standards to the conduct alleged.

Therefore, defendants' motion in this part is denied. Plaintiff's excessive force claims under the Fourth and Fourteenth Amendments against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford, in their individual capacities (first and third claims), are allowed to proceed.

   c.   State Tort Claims

Defendants argue that plaintiff's state tort claims against them in their individual capacities are barred by public official immunity. The court disagrees.

"Under North Carolina's public official immunity doctrine . . . a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022). "Elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Id.

Here, plaintiff has alleged facts to give rise to a plausible inference that individual defendants engaged in the challenged actions "with malice" sufficient to overcome public official immunity, where plaintiff has alleged facts stating a claim for false arrest and excessive force in violation of the Fourth and Fourteenth Amendments. See Knibbs, 30 F.4th at 227-228 ("The same facts that a jury could find that would permit the conclusion that Deputy['s] use of force was unreasonable under the Fourth Amendment would also permit a finding that he acted contrary to his duties as a law enforcement officer."). Additional facts alleged regarding unnecessary use of force and mocking of plaintiff are sufficient at this juncture to overcome public official immunity. See id. at 228.

Defendants contend public official immunity applies because plaintiffs' complaint "clearly reveals that the [defendant] police officers lawfully detained [p]laintiff because she was driving a vehicle with a fictitious license plate." (Def's Mem. (DE 39) at 30). They also contend that plaintiff was "lawfully arrested for resisted, delaying and obstructing the investigation and for spitting blood on one of the officers - - both offenses based on probable cause as determined by a magistrate judge." (Id.). Neither of these contentions by defendants, however, are supported by the allegations in plaintiffs' complaint. Rather, defendants rely upon their own assertion of facts outside of the complaint, which the court need not credit in adjudicating their motion to dismiss under Rule 12(b)(6).

Defendants also argue that plaintiff fails to state a claim for intentional infliction of emotional distress because "a neutral magistrate judge concluded that probable cause existed for [p]laintiff's arrest," (Defs' Mem. (DE 39) at 25), which argument is unavailing on the same basis as their public official immunity argument. Finally, they argue that plaintiff has "not alleged severe emotional distress." (Id. at 26). In this context, "'severe emotional distress' means any

emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so."  Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990).  Here, defendants' argument is belied by plaintiff's allegations that she was "experiencing an acute panic attack," an "agitated and paranoid state," and "hyperventilat[ed] and "passe[d] out," as a result of officer's conduct. (Compl. ¶¶ 45-49).

In sum, plaintiff has alleged sufficient facts to overcome public officer immunity with respect to plaintiff's state tort claims against individual defendants, and she has stated a claim upon which relief can be granted for her intentional infliction of emotional distress claim as challenged by defendants.  Therefore, defendants' motion in this part is denied.  Plaintiff's state tort claims against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford, in their individual capacities (fifth, sixth, seventh, eighth, and ninth claims) are allowed to proceed.

        d.      Individual State Constitutional Claims

"Plaintiff concedes that there is no liability for individual [d]efendants under the North Carolina Constitution."  (Pl's Resp. (DE 53) at 18).  Therefore, defendants' motion in this part is granted.  Plaintiff's state constitutional claim against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford, in their individual capacities (fourth claim for relief), is dismissed.  The court addresses further below official capacity state constitutional claims.

        2.      Official Capacity Claims

        a.      Duplicative Federal Claims

Plaintiff asserts federal official capacity claims against defendants Gina Hawkins ("Hawkins") and Mitch Colvin ("Colvin") under § 1983.  However, "[o]fficial-capacity suits . . .

generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985). Therefore, plaintiffs' federal claims against defendant Hawkins and Colvin in their official capacities are duplicative and are dismissed. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004).

Accordingly, defendants' motion in this part is granted. All federal claims against defendants Hawkins and Colvin (first, second, and third claims) are dismissed on this basis.

### b.    Monell

Defendants argue that plaintiff fails to plead a claim against the City of Fayetteville under Monell. The court agrees.

A local government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff. Monell, 436 U.S. at 694. "A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (emphasis added).

As an initial matter, plaintiff does not allege that "the existence of a policy, or any part of it, was the cause of [her] injury." Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). Rather, she asserts that defendants Hawkins and Colvin "failed to properly train and/or supervise the law enforcement officers." (Compl ¶¶ 68-72). Accordingly, plaintiff's Monell claim properly is analyzed under the third and fourth Lytle categories.

13

With respect to a <u>Monell</u> claim based upon a failure to train, failure to supervise, or custom and usage, "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference." <u>Owens v. Baltimore City State's Att'ys Off.</u>, 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must allege "continued inaction in the face of documented widespread abuses," <u>Grayson v. Peed</u>, 195 F.3d 692, 697 (4th Cir. 1999), such as through allegations of "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress" an assertion of a custom or usage. <u>Owens</u>, 767 F.3d at 403; <u>see</u> <u>Wellington v. Daniels</u>, 717 F.2d 932, 936 (4th Cir. 1983) ("Generally, a failure to supervise gives rise to § 1983 liability, . . . only in those situations in which there is a history of widespread abuse. Only then may knowledge be imputed to the supervisory personnel."). At bottom "proof of a single violation will not support the inference that the violation resulted from a municipal 'policy' of deficient training," or a "custom of comparable practices." <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1391 (4th Cir. 1987).

Here, plaintiff fails to allege a "persistent and widespread practice of municipal officials," <u>Owens</u>, 767 F.3d at 402, or "continued inaction in the face of documented widespread abuses," <u>Grayson</u>, 195 F.3d at 697. Rather, she alleges only a "single violation," her own arrest and application of excessive force against her, which is insufficient to state a <u>Monell</u> claim. <u>Spell</u>, 824 F.2d at 1391.

Plaintiff argues that she states a <u>Monell</u> claim because she "alleges deficiencies in the training and/or supervision of officers in regards to the proper and lawful use of force during a traffic stop, against persons suspected of a misdemeanor offense, and against persons experiencing medical or mental health crisis." (Pl's Mem. (DE 53) at 13; <u>see</u> Compl. ¶¶ 68-70). These

assertions, however, are conclusory and do not meet the standard as articulated herein for stating a <u>Monell</u> claim for failure to train or supervise.  <u>Owens</u>, 767 F.3d at 402; <u>Grayson</u>, 195 F.3d at 697; <u>Spell</u>, 824 F.2d at 1391.

Plaintiff argues that she should not have to allege prior instances of constitutional violations to state a <u>Monell</u> claim, because such information is not public.  However, under applicable pleading standards, a plaintiff must allege some facts that permit an inference of persistent and widespread practices.  <u>See</u> <u>Owens</u>, 767 F.3d at 402.  Plaintiff has not here alleged factual allegations on this issue to "produce an inference of liability strong enough to nudge the plaintiff's claims across the line from conceivable to plausible." <u>Nemet Chevrolet, Ltd.</u>, 591 F.3d at 256.

Therefore, defendants' motion in this part is granted.  Plaintiff's <u>Monell</u> claim fails as a matter of law and is dismissed.  As a result, the sole federal claim against defendant City of Fayetteville is dismissed.

c.      Official Capacity State Tort Claims

Defendants argue they are protected from liability on state tort claims against them in their official capacities by the doctrine of governmental immunity, and that they have not waived immunity through the purchase of liability insurance by defendant City of Fayetteville.  Therefore, defendants argue such claims should be dismissed for lack of jurisdiction under Rule 12(b)(1) or 12(b)(2).  The court agrees.

"North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of governmental, as opposed to proprietary, functions." <u>Evans v. Chalmers</u>, 703 F.3d 636, 655 (4th Cir. 2012).  "[T]he provision of police services constitutes a governmental function protected by governmental immunity." <u>Id.</u>  Further, under North Carolina law, once it is determined that a municipality is subject to such immunity, then all

15

municipal defendants sued in their official capacities are "entitled to governmental immunity to that same extent." Mullis v. Sechrest, 347 N.C. 548, 555 (1998).

A defendant municipality may "waive[] its governmental immunity by purchasing liability insurance pursuant to N.C. Gen.Stat. § 160A–485(a)." Evans, 703 F.3d at 655. "Any city is authorized to waive its immunity from civil liability in tort by the act of purchasing liability insurance." N.C. Gen. Stat § 160A-485(a). "Immunity shall be waived only to the extent that the city is indemnified by the insurance contract from tort liability." Id.

"Well-established North Carolina law holds that courts may not lightly infer a waiver of immunity." Evans, 703 F.3d at 655. "Indeed, immunity is waived only to the extent that the city or town is indemnified by the insurance contract from liability for the acts alleged." Id. In determining such immunity, "the meaning of language used in an insurance contract is a question of law for the Court." Id. at 655 n. 13. Further, under North Carolina law, governmental immunity presents a question of personal and subject matter jurisdiction. Myers v. McGrady, 360 N.C. 460, 465 n. 2 (2006).[7]

Here, governmental immunity applies based upon defendants' alleged "provision of police services." Evans, 703 F.3d at 655. Further defendants have not waived governmental immunity through the City of Fayetteville's purchase of the insurance policy attached to defendant's motion to dismiss. (See Hewett Aff. (DE 38-1) ¶ 7; Insurance Policy, Hewett Aff. Ex. A (DE 38-1) at 18).[8] Indeed, the insurance policy contains a reservation of immunities provision, which states

---

[7]     Where the Supreme Court of North Carolina has not resolved whether governmental immunity presents a question of subject-matter jurisdiction or personal jurisdiction, see Myers, 360 N.C. at 465 n. 2, the court evaluates that part of defendants' motion to dismiss for lack of jurisdiction under both standards, which are not materially different for purposes of the instant analysis.

[8]     Page numbers in citations to the insurance policy are to the page numbers specified by the court's case management / electronic case filing ("CM/ECF") system, and to the page number, if any showing on the face of the document.

"[t]his policy does not apply to any amount for which the insured would not be liable under applicable governmental or sovereign immunity but for the existence of this Policy; the issuance of this insurance shall not be deemed a waiver of any governmental or sovereign immunities by or on behalf of any insured." (Insurance Policy, Hewett Aff. Ex. A (DE 38-1) at 18) (hereinafter the "reservation of immunities provision").

Plaintiff argues that the reservation of immunities provision in the insurance policy does not apply because the policy later includes a "public officials wrongful act" coverage form, which defines "public officials wrongful act" to include "[e]rror or omission, neglect or breach of duty by an insured," "[v]iolation of civil rights," and "[v]iolation of any state civil rights law." (Id. at 110, 129) (hereinafter the "public officials wrongful act form"). Plaintiff points out that the public officials wrongful act form includes "conditions" that "add[s] to or replace[s] the Common Policy Conditions which also apply to this policy," including the reservation of immunities provision. (Id. at 121). Accordingly, plaintiff argues, the public officials wrongful act form trumps the reservation of immunities provision, or at least creates an ambiguity that must be "resolved in favor of providing coverage." (Pl's Mem. (DE 53) at 8).

North Carolina courts follow "traditional rules of contract instruction when interpreting insurance policies." Dawes v. Nash Cnty., 357 N.C. 442, 448 (2003). "When the language of the policy is ambiguous, courts must resolve the ambiguity in favor of coverage." Hunter v. Town of Mocksville, N. Carolina, 897 F.3d 538, 548 (4th Cir. 2018). Likewise, "any provisions excluding or limiting coverage are construed strictly against the insurance company." Id. "If, however, the meaning of the policy is clear and only one reasonable interpretation exists, the court must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the

17

contract or impose liabilities on the parties not bargained for and found therein." <u>Dawes</u>, 357 N.C. at 449.

Here the reservation of immunities provision is clear and unambiguous where it states "the issuance of this insurance shall not be deemed a waiver of any governmental or sovereign immunities by or on behalf of any insured." (Insurance Policy, Hewett Aff. Ex. A (DE 38-1) at 18). By contrast, the public officials wrongful act form does not say anything about immunities, much less the reservation of immunities provision in particular. (<u>Id.</u> at 129). Therefore, it does not create a conflict or ambiguity regarding the application of the reservation of immunities provision.

Plaintiff's argument that the "conditions" in the form create an ambiguity where they "add to or replace the Common Policy Conditions which also apply to this policy" is unavailing. (<u>Id.</u> at 121). None of the "conditions" in this cited section address the substance of coverage or immunities. Rather, they involve claims administration procedures. For example, they provide the insured must notify the claims administrator "as soon as practicable of any 'loss' or 'public officials wrongful act(s)' which may result in a 'claim' or 'suit.'" (<u>Id.</u>). The conditions do not purport to or suggest a replacement of the reservation of immunities provision. (<u>See id.</u> at 121-123). In sum the reservation of immunities provision in the insurance policy is clear and unambiguous in preserving governmental immunity on behalf defendants.

Therefore, defendants' motion in this part is granted. Plaintiff's state tort claims against defendants in their official capacities (fifth, sixth, seventh, eighth, and ninth, claims)[9] are dismissed for lack of jurisdiction under Rule 12(b)(1) and 12(b)(2) due to governmental immunity.

---

[9]    Necessarily, that part of defendants' motion seeking dismissal of plaintiff's claim for punitive damages against them in their official capacities also must be granted due to such immunity, and also because punitive damages

d. Official Capacity State Constitution Claim

Defendants argue plaintiff's state constitution claim against them in their official capacities must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6). The court agrees.

"To assert a direct constitutional claim against [a governmental entity] for violation of [a plaintiff's] . . . rights, a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." Copper ex rel. Copper v. Denlinger, 363 N.C. 784, 788 (2010). "[A]n 'adequate remedy' exists when the plaintiff has access to court to raise the constitutional violation, and the court can provide some form of relief for that violation, even if plaintiff does not view that relief as complete." Washington v. Cline, 898 S.E.2d 667, 671 (N.C. 2024).[10] Only when a plaintiff otherwise "cannot access the courts to obtain any form of relief, [the North Carolina constitutional claim] is available." Id. Such a claim is available only in "extraordinary circumstances where the law does not already provide other established claims and remedies." Id. Accordingly, for example, a North Carolina constitutional claim is "not available [where a] plaintiff could sue police officers in their individual capacities." Id. (citing Wilcox v. City of Asheville, 222 N.C. App. 285, 300 (2012)).

Here, a North Carolina constitutional claim is not available because plaintiff is able to bring claims against defendants in their individual capacities for the same alleged violations. In particular, plaintiff bases her North Carolina constitutional claim on "excessive force against [p]laintiff," "physical and emotional harm," "depriv[ing] [p]laintiff of liberty interests," and

---

are not available against defendants in their official capacities. See Long v. City of Charlotte, 306 N.C. 187, 208 (1982).

[10]    The court cites to the Southeastern Reporter here because a North Carolina Reporter citation is not yet available.

"subject[ing] plaintiff to actions of humiliation and punishment with no legitimate government interest." (Compl. ¶ 87). Plaintiff's state tort claims are based on the same alleged actions. (See Id. ¶¶ 92-122).

Therefore, defendants' motion in this part is granted. Plaintiff's North Carolina constitutional claim against defendants in their official capacities (claim four) is dismissed. In sum, as a result of the court's analysis herein, all claims against defendants City of Fayetteville, Hawkins, and Colvin are dismissed, and these defendants are terminated from this action. All official capacity claims against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford are dismissed, and only individual capacity claims against them remain.

## CONCLUSION

For the forgoing reasons, defendants' motion to dismiss (DE 38) is GRANTED IN PART and DENIED IN PART, as follows:

1. Plaintiff's federal claims against defendants Hawkins and Colvin (first, second, and third claims) and plaintiff's Monell claim against defendant City of Fayetteville (second claim) are DISMISSED under Rule 12(b)(6).

2. Plaintiff's state tort claims against defendants in their official capacities (fifth, sixth, seventh, eighth, and ninth claims and punitive damages) are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction and personal jurisdiction under Rule 12(b)(1) and 12(b)(2) due to governmental immunity.

3. Plaintiff's state constitutional claim (fourth claim) is DISMISSED under Rule 12(b)(6).

4. As a result, the clerk is DIRECTED to terminate defendants City of Fayetteville, Hawkins, and Colvin, on the basis of this order.

20

5.      Plaintiff's Fourth and Fourteenth Amendment claims against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford, in their individual capacities (first and third claims) are allowed to proceed.

6.      Plaintiff's state tort claims against defendants O'Hara, Rodriguez, Bell, Zentner, and Wolford, in their individual capacities (fifth, sixth, seventh, eighth, and ninth claims) are allowed to proceed.

Remaining defendants must file a responsive pleading with 14 days of the date of this order, pursuant to Rule 12(a)(4). Thereafter, a separate order will issue directing the remaining parties' pretrial conference activities and subsequent report to the court in accordance with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED, this the 17th day of June, 2024.


LOUISE W. FLANAGAN
United States District Judge